1 | McGREGOR W. SCOTT
United States Attorney
2 | WILLIAM S. WONG
Assistant U.S. Attorney
3 | 501 I Street, Suite 10-100
Sacramento, California 95814
4 | Telephone: (916) 554-2790



5

6

7                   IN THE UNITED STATES DISTRICT COURT

8               FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10 | UNITED STATES OF AMERICA,        )        CR. No. S-06-451 EJG
                                   )
11 |               Plaintiff,        )        PLEA AGREEMENT
                                   )
12 |     v.                          )
                                   )
13 | NEAL EDWARD PETERSON, JR.,      )
                                   )
14 |               Defendant.        )
                                   )
15 | _____)

16                                    I.

17                             **INTRODUCTION**

18      **A.  Scope of Agreement:**  The Superseding Indictment in this

19 | case charges the defendant with 18 U.S.C. §§ 2113(a) and (d), 2 -

20 | Attempted Armed Bank Robbery, Aiding and Abetting (Count One); 18

21 | U.S.C. §§ 2113(a) and (d), 2 - Armed Bank Robbery, Aiding and

22 | Abetting (Counts Three, Five, and Seven); and 18 U.S.C. § 924(c)(1),

23 | 2 - Use of a Firearm, Aiding and Abetting (Counts Two, Four, and

24 | Six).  This document contains the complete Plea Agreement between

25 | the United States Attorney's Office for the Eastern District of

26 | California (the "government") and the defendant regarding this case.

27 | This Plea Agreement is limited to the United States Attorney's

28 | Office for the Eastern District of California and cannot bind any

                                    1

1 | other federal, state, or local prosecuting, administrative, or
2 | regulatory authorities.

3 | **B.  Rule 11(c)(1)(C) Specific Sentence Agreement:**  The
4 | government and the defendant agree that a specific sentence of one
5 | hundred thirty-two (132) months in custody for Count Three, to run
6 | concurrently to a one hundred thirty-two (132) months sentence for
7 | Count Five, which shall run consecutively to eighty-four (84) months
8 | in custody for Count Six, for a total aggregate sentence of two
9 | hundred sixteen (216) months in custody would be appropriate in this
10 | case.  Consequently, this Plea Agreement is being offered to the
11 | Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal
12 | Procedure.  Under the provisions of Rule 11(c)(2) and (3), the Court
13 | may accept or reject the agreement, or may defer its decision as to
14 | the acceptance or rejection until there has been an opportunity to
15 | consider the presentence report.  If the Court accepts the Plea
16 | Agreement, the Court will inform the parties that it will embody in
17 | the judgment and sentence the disposition provided for in this Plea
18 | Agreement.  If the Court rejects this Plea Agreement, the Court
19 | shall so advise the parties, allow either party the opportunity to
20 | withdraw from this plea agreement, and advise the defendant that if
21 | he persists in a guilty plea the disposition of the case may be less
22 | favorable to him than is contemplated by this Plea Agreement.

23 | **II.**

24 | **DEFENDANT'S OBLIGATIONS**

25 | **A.  Guilty Pleas:**  The defendant will plead guilty to Counts
26 | Three and Five: 18 U.S.C. §§ 2113(a) and (d) - Armed Bank Robbery,
27 | and Count Six: 18 U.S.C. § 924(c)(1) - Use of a Firearm.  The
28 | defendant agrees that he is in fact guilty of these charges and that

1 | the facts set forth in the Factual Basis attached hereto as
2 | Exhibit A are accurate.

3 | ### III.

4 | ### THE GOVERNMENT'S OBLIGATIONS

5 | **A.  Recommendations:**

6 |     **1.  Dismissal:**  The government shall move to dismiss with
7 | prejudice the remaining charges alleged in the Superseding
8 | Indictment at the time of sentencing if the defendant complies with
9 | the terms and conditions contained in this Agreement.

10 |     **2.  Acceptance of Responsibility:**  The government shall
11 | recommend that the defendant receive a three-level downward
12 | adjustment in the base offense level pursuant to U.S.S.G. § 3E1.1(b)
13 | on the condition that the defendant fully accepts responsibility for
14 | his role in the offense.

15 | ### IV.

16 | ### MAXIMUM SENTENCE

17 | **A.  18 U.S.C. §§ 2113(a) and (d).**

18 |     The maximum sentence the Court can impose on each count charged
19 | in Counts Three and Five is not more than twenty-five (25) years of
20 | incarceration, a five (5) year period of supervised release, a fine
21 | of Two Hundred Fifty Thousand ($250,000) Dollars, and a special
22 | assessment of One Hundred ($100) Dollars.  If the defendant should
23 | violate a condition of supervised release, he can be returned to
24 | prison for up to three (3) years.

25 | **B.  18 U.S.C. § 924(c)(1).**

26 |     The maximum sentence which the Court can impose on Count Six is
27 | a mandatory minimum sentence of seven (7) years to life of
28 | incarceration consecutive to any other sentence imposed on Counts

1   Three and Five, a five (5) year period of supervised release, a fine
2   of Two Hundred Fifty Thousand ($250,000) Dollars, and a special
3   assessment of One Hundred ($100) Dollars.  If the defendant should
4   violate a condition of supervised release, he can be returned to
5   prison for some or all of the term of supervised release actually
6   imposed by the Court.

7        **C.   Restitution.**

8        By signing this agreement, the defendant also agrees that the
9   Court can order the payment of restitution for the full loss caused
10  by the defendant's wrongful conduct.  The defendant agrees that the
11  restitution order is not restricted to the amounts alleged in the
12  specific count to which the defendant is pleading guilty.   The
13  defendant further agrees that he will not attempt to discharge in
14  any present or future bankruptcy proceeding any restitution imposed
15  by the Court.

16                              **V.**

17                   **ELEMENTS OF THE OFFENSE**

18       **A.   18 U.S.C. §§ 2113(a) and (d).**

19       The defendant is charged in Counts Three and Five of the
20  Superseding Indictment with armed bank robbery in violation of
21  Sections 2113(a) and (d) of Title 18 of the United States Code.   In
22  order for the defendant to be found guilty of that charge, the
23  government must prove each of the following elements beyond a
24  reasonable doubt:

25       First, the defendant took from employees of the bank money
26  belonging to the bank;

27       Second, the defendant used force and violence or intimidation
28  in doing so;

                              4

1    Third, the deposits of the bank were then federally insured;
2  and

3    Fourth, the defendant intentionally assaulted or put in
4  jeopardy the life of any person by the use of a dangerous weapon or
5  device in committing the offense.

6    **B.   18 U.S.C. § 924(c)(1).**

7    The defendant is charged in Count Six of the Superseding
8  Indictment with using and carrying a firearm during the commission
9  of a crime of violence in violation of Section 924(c)(1) of Title 18
10 of the United States Code.  In order for the defendant to be found
11 guilty of that charge, the government must prove each of the
12 following elements beyond a reasonable doubt:

13   First, the defendant committed the crime of armed bank robbery
14 charged in Count Five of the Superseding Indictment; and

15   Second, the defendant knowingly used or carried a handgun; and
16   Third, the defendant used or carried the handgun during and in
17 relation to the crime.

18   A defendant has "used" a firearm if he has actively employed
19 the firearm in relation to an armed robbery.  Use includes any of
20 the following:

21   (1) brandishing, displaying, or striking with;

22   (2) referring to the firearm in the offender's possession; or

23   (3) the silent but obvious and forceful presence of a firearm
24 in plain view.

25   A defendant has "carried" a firearm if he has transported the
26 firearm on or about his person.  This means the firearm must have
27 been immediately available for use by the defendant.

28   A defendant takes such action "in relation to the crime" if the

5

1  firearm facilitated or played a role in the crime.

2  ### VI.

3  ### SENTENCING DETERMINATION

4  **A. Statutory Authority:**  The defendant understands that the
5  Court must consult the Federal Sentencing Guidelines (as promulgated
6  by the Sentencing Commission pursuant to the Sentencing Reform Act
7  of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
8  modified by United States v. Booker and United States v. Fanfan, 543
9  U.S. 420 (2005)), and must take them into account when determining a
10 final sentence.  Defendant understands that the Court will determine
11 a non-binding and advisory guideline sentencing range for this case
12 pursuant to the Sentencing Guidelines.  Defendant further
13 understands that the Court will consider whether there is a basis
14 for departure from the guideline sentencing range (either above or
15 below the guideline sentencing range) because there exists an
16 aggravating or mitigating circumstance of a kind, or to a degree,
17 not adequately taken into consideration by the Sentencing Commission
18 in formulating the Guidelines.  Defendant further understands that
19 the Court, after consultation and consideration of the Sentencing
20 Guidelines, must impose a sentence that is reasonable in light of
21 the factors set forth in 18 U.S.C. § 3553(a).

22 ### VII.

23 ### WAIVERS

24 **A.  Waiver of Constitutional Rights:**  The defendant understands
25 that by pleading guilty he is waiving the following constitutional
26 rights:   (a) to plead not guilty and to persist in that plea if
27 already made; (b) to be tried by a jury; (c) to be assisted at trial
28 by an attorney, who would be appointed if necessary; (d) to subpoena

6

1 witnesses to testify on his behalf; (e) to confront and cross-
2 examine witnesses against him; and (f) not to be compelled to
3 incriminate himself.

4    **B.  Waiver of Appeal and Collateral Attack:**  The defendant
5 agrees to waive all rights to appeal this plea and sentence and to
6 attack collaterally this plea and sentence whether by way of a
7 motion pursuant to 28 U.S.C. § 2255 or otherwise.

8       The defendant also gives up any right he may have to bring a
9 post-conviction attack on his conviction or his sentence.   He
10 specifically agrees not to file a motion under 28 U.S.C. § 2255 or
11 § 2241 attacking his conviction or sentence.

12      If the defendant's conviction on the count to which he is
13 pleading is ever vacated at the defendant's request, or his sentence
14 is ever reduced at his request, the government shall have the right
15 to file any new charges that would otherwise be barred by this
16 agreement.   The decision to pursue this option is solely in the
17 discretion of the United States Attorney's Office.  By signing this
18 agreement, the defendant agrees to waive any objections, motions,
19 and defenses he might have to the government's decision.   In
20 particular, he agrees not to raise any objections based on the
21 passage of time with respect to such charges including, but not
22 limited to, any statutes of limitation or any objections based on
23 the Speedy Trial Act or the Speedy Trial Clause of the Sixth
24 Amendment.

25                              **VIII.**

26                     **ENTIRE PLEA AGREEMENT**

27      Other than this Plea Agreement, no agreement, understanding,
28 promise, or condition between the government and the defendant

                                 7

1 exists, nor will such agreement, understanding, promise, or
2 condition exist unless it is committed to writing and signed by the
3 defendant, counsel for the defendant, and counsel for the United
4 States.

## IX.

### APPROVALS AND SIGNATURES

7   **A.  Defense Counsel:**  I have read this Plea Agreement and have
8 discussed it fully with my client.  The Plea Agreement accurately
9 and completely sets forth the entirety of the agreement.  I concur
10 in my client's decision to plead guilty as set forth in this
11 Agreement.

13 DATED: 9/18/08

MICHAEL BIGELOW,
Attorney for Defendant

15   **B.  Defendant:**  I have read this Plea Agreement and carefully
16 reviewed every part of it with my attorney.  I understand it, and I
17 voluntarily agree to it.  Further, I have consulted with my attorney
18 and fully understand my rights with respect to the provisions of the
19 Sentencing Guidelines and the sentencing factors pursuant to 18
20 U.S.C. § 3553(a) which may apply to my case.  No other promises or
21 inducements have been made to me, other than those contained in this
22 Agreement.  In addition, no one has threatened or forced me in any
23 way to enter into this Plea Agreement.  Finally, I am satisfied with
24 the representation of my attorney in this case.

26 DATED: 9/18/08

Neal Peterson Jr.
NEAL EDWARD PETERSON, JR.
Defendant

28 ///

8

1    **C.  Attorney for United States:**  I accept and agree to this

2   Plea Agreement on behalf of the government.

3   DATED:    _September 23, 2008_           McGREGOR W. SCOTT

4                                           United States Attorney

5

                                    By:   _____
6                                         WILLIAM S. WONG
7                                         Assistant U.S. Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    9

1    **EXHIBIT "A"**

2    **Factual Basis for Plea**

3         The parties agree that Exhibit A is only a summary of the facts
     and that the government and the defendant may provide additional
4    facts to the Court at the time of the taking of the plea and
     sentencing.

5

6                    **Count Three - World Savings Bank**

7         On January 7, 2005, at approximately 5:52 p.m., Neal Edward
     Peterson, Jr., and Irvin Griffin entered the World Savings Bank, 301
     Broadway Street, Chico, California, and pointed handguns and
8    threatened bank employees and customers with violence in order to
     rob the bank of approximately $5,030.50 in U.S. currency.

9

10        Peterson brandished a black colored handgun.  Peterson was
     wearing a black leather jacket, dark colored beanie, dark gloves,
     white athletic shoes, and had his face partially covered with a
11   green/white bandana.  Griffin brandished a handgun.  Griffin was
     wearing a grey hooded sweatshirt, dark pants, white shoes, and white
12   gloves.  While Griffin controlled the employees and customers,
     Peterson went behind the teller counter area and removed money from
13   the teller drawers.  The robbers threatened the employees and bank
     customers with violence in order to gain compliance in order to
14   conduct the armed bank robbery.

15        Peterson and Griffin fled south behind the bank through a
     parking lot and alleyway to a waiting light grey/silver four door
16   Toyota Camry driven by Javaris Marquez Tubbs.  Peterson and Griffin
     both got into the back seat area of the vehicle and laid down.

17

18        A witness observed a vehicle matching the description of the
     Toyota Camry facing east parked on 4th Street, next to the Chico
     Paper Company.  The witness observed the vehicle driven by a male,
19   drive forward and then reverse several times in its parking spot,
     hitting two parked vehicles before peeling out and driving east on
20   4th Street.  In an interview with agents of the FBI, Tubbs, a
     participant in the robbery of the World Savings Bank, confirmed that
21   he had parked a Toyota Camry on 4th Street, facing east (next to the
     Chico Paper Company) and drove the vehicle eastbound away from the
22   bank with Peterson and Griffin hiding in the back seat area.  They
     then drove to a nearby motel after the robbery.

23

24        The loss to World Savings Bank was approximately $5,030.50.
     The bank was insured by the Federal Deposit Insurance Corporation at
     the time of the robbery.

25

26              **Counts Five and Six - Washington Mutual Bank**

27        On January 31, 2005, at approximately 1754 hours, two Black
     males ran into the bank.  As Neal Edward Peterson, Jr. ordered
     everyone in the bank to get on the floor, Peterson pointed an
28   object, which appeared to be a handgun and was covered in some type

                                   10

1  of red cloth.   Peterson brandished the weapon and yelled at people
   that he would shoot them if they made any moves.   Michael Blanche
2  then jumped over the counter and began removing money from the
   tellers' cash drawers and putting the money in a light colored bag.
3  After taking the money, Blanche jumped the counter again and the two
   robbers exited the building through the north entrance.   Bank
4  employees were able to identify the robbers as Black males even
   though the robbers had some type of mask covering most of their
5  faces.

6       Neal Edward Peterson, Jr. admits that he and Michael Blanche
   were the two robbers who entered the Washington Mutual Bank on
7  Florin Road in Sacramento, California, to commit armed bank robbery
   by brandishing a handgun.   Peterson, Blanche, and Javaris Tubbs
8  cased the bank for several minutes until parking briefly behind the
   nearby Bel Air grocery store and strip mall area.   Tubbs
9  participated in the robbery by driving the getaway car.

10      Following the robbery, Peterson and Blanche ran back to the
   vehicle where Tubbs was waiting.   Peterson was carrying the money in
11 the bag.   They drove to 4102 Spindrifter Lane, where they divided
   the money.
12
        The loss to Washington Mutual Bank was approximately $9,453.00.
13 The bank was insured by the Federal Deposit Insurance Corporation at
   the time of the robbery.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28